**Richard Wayne SNELL, Petitioner,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Respondent.**

No. PB–C–89–332.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

April 24, 1992.

Jeff Rosenzweig, Little Rock, Ark., G. William Currier, John J. McAvoy, Harriet Ann Robinson, Beth Haroules, White & Case, Washington, D.C., for petitioner.

Jack Gillean, Deputy Atty. Gen., Darnisa Evans Johnson, Asst. Atty. Gen., Little Rock, Ark., for respondent.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

On November 3, 1983, William Stumpp was murdered in the course of a robbery of his pawnshop in Texarkana, Arkansas. On November 1, 1984, Richard Wayne Snell was charged with capital murder in the death of William Stumpp. The trial was conducted before the Honorable Philip Purifoy, Miller County Circuit Court at Texarkana, Arkansas between August 13 and August 15, 1985, resulting in a conviction and a sentence of death by lethal injection. Snell was represented at trial by court-appointed counsel Marshall Moore and Rick Shumaker.

The Arkansas Supreme Court affirmed the conviction and sentence on direct appeal. *Snell v. State*, 290 Ark. 503, 721 S.W.2d 628 (1986), *reh'g denied*, 723 S.W.2d 1 (per curiam), *cert. denied*, 484 U.S. 872, 108 S.Ct. 202, 98 L.Ed.2d 153 (1987). Thereafter, the Arkansas Supreme Court denied Snell's petition to proceed in Miller County Circuit Court pursuant to Arkansas Criminal Procedure Rule 37 for post-conviction relief.[1] *Snell v. State*, No. CR 85–206, 1988 WL 81730 (Ark. Oct. 3, 1988) (per curiam), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989).

On June 16, 1989, Richard Wayne Snell filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254.[2] On June 19, 1989, the district court granted a stay of execution. An evidentiary hearing was held in Little Rock, Arkansas November 5 through November 8, 1991 and January 21 through January 23, 1992. The petitioner alleges that numerous constitutional errors occurred during his trial which he contends require this Court to set aside the conviction and sentence of death. The petitioner claims that his: (A) Fifth, Sixth, Eighth and Fourteenth Amendment right to an impartial jury in both the guilt and penalty phases of the trial was violated due to pretrial publicity; (B) Sixth and Fourteenth Amendment right to effective assistance of counsel was violated in the guilt and penalty phases of the trial and on direct appeal; (C) Fifth, Sixth, Eighth and Fourteenth Amendment rights were violated by prosecutorial misconduct during the guilt and penalty phases of the trial; (D) First, Fifth, Sixth and Fourteenth Amendment rights to free association, presumption of innocence and a fair and unbiased trial were violated due to the introduction

---

[1] The Arkansas Supreme Court, effective July 1, 1989, abolished Arkansas Criminal Procedure Rule 37, thereby eliminating the state post-conviction remedy. *See Whitmore v. State*, 299 Ark. 55, 771 S.W.2d 266 (1989).

[2] This Court is sitting by designation from the District of North Dakota.

of evidence of the beliefs, aims, crimes, and wrongs of an organization called "The Covenant, The Sword and The Arm of The Lord" (CSA) and; (E) Fifth, Eighth and Fourteenth Amendment rights were violated by the sentencing instructions to the jury. The Court will address each issue in turn.

## I. GUILT PHASE

### A. *Procedural Default*

■ The respondent raises procedural default defenses to the claims of prejudicial CSA evidence and prosecutorial misconduct. The doctrine of procedural default requires the petitioner to "present his federal claims to the state courts in a timely or procedurally correct manner in order to provide the state courts an opportunity to decide the merits of those claims." *Kennedy v. Delo*, 959 F.2d 112, 115 (8th Cir.1992). The petitioner should present the same factual arguments and legal theories in both the state and federal claims. *Kenley v. Armontrout*, 937 F.2d 1298, 1302 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991). In the event that the petitioner did not so present his federal claims, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). *See also Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

### 1. CSA Evidence

■ The petitioner claims that the admission of evidence regarding the activities of the CSA violated his First, Fifth, Sixth and Fourteenth Amendment rights to free association, a presumption of innocence, and a fair and unbiased trial. The trial court allowed the admission of CSA evi-

dence regarding beliefs, weapons, military training, criminal activities, and an alleged plan to rob a Springfield, Missouri pawnshop. The petitioner's relevancy objections were overruled by the court.

On appeal, the petitioner argued that the CSA evidence was irrelevant, prejudicial and improper under the rules of evidence. First, the petitioner argued that the trial court erred in allowing certain testimony during the state's cross-examination of Tim Russell. The testimony regarded, in part, Russell's grandfather and the grandfather's activities.[3] Without citation to any cases, the petitioner argued that the testimony was inadmissible and that the trial court abused its discretion in allowing such testimony.

Second, the petitioner argued that the trial court erred in allowing certain testimony during the state's cross-examination of Bennie Avery. Again, without citation to any cases, the petitioner asserted that the questioning was irrelevant and went beyond the scope of permissible cross-examination. The petitioner next argued that the trial court erred in allowing the testimony of state witness Kent Yates. The petitioner argued, without case citation, that the testimony was irrelevant under the rules of evidence. Fourth, the petitioner argued that the trial court erred in admitting evidence that the petitioner and others planned to rob a Springfield, Missouri pawnshop prior to the Stumpp robbery and murder. The petitioner again urged reversal based upon the rules of evidence. Finally, the petitioner contended that the trial court erred in allowing state witness William Thomas to testify as to CSA crimes. Again, the petitioner sought relief under the rules of evidence. Only in his final sentence did Snell allude to the Constitution. "To deny appellant a new trial as a result of the irrelevant and prejudicial testimony being admitted into evidence would make a mockery out of the due process clause of the United States Constitution." Appellant's Abstract and Brief at 276–277,

---

**3.** As Justice Purtle stated in his dissenting opinion, "[w]hether the grandfather of this witness was a shining light in his church or hanged as a horse thief is not relevant to this case." *Snell v. State,* 721 S.W.2d at 642.

*Snell v. State,* 721 S.W.2d 628 (Ark.1986). Pet.Exh. 46.

"It is not enough that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam) (citing *Picard v. Connor,* 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)). "Failure to present the same legal theory in state court constitutes a bar to federal habeas corpus review." *Johnson v. Armontrout,* 923 F.2d 107, 108 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 106, 116 L.Ed.2d 75 (1991). While the petitioner did present the same facts to the Arkansas Supreme Court, it is obvious that he did not present his federal constitutional claims to the Arkansas Supreme Court. The failure to cite any federal case or any constitutional provision other than that mentioned above, "was not a sufficient presentation of the federal constitutional issue." *Thomas v. Wyrick,* 622 F.2d 411, 413 (8th Cir.1980). The Arkansas Supreme Court cannot be faulted for failing to consider *sua sponte* the petitioner's federal claims. *Picard,* 404 U.S. at 277, 92 S.Ct. at 513. Accordingly, since no non-futile state remedies remain, the federal habeas claim concerning CSA evidence is procedurally defaulted unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation. *See McDougald v. Lockhart,* 942 F.2d 508, 511 (8th Cir.1991); *Smittie v. Lockhart,* 843 F.2d 295, 296 (8th Cir.1988).

■ The petitioner alleges ineffective assistance of counsel as cause for the default. Ineffective assistance of counsel can be cause for a procedural default. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). However, the petitioner must first show that this claim of ineffective assistance of counsel was presented to the state courts as an independent claim. *Murray,* 477 U.S. at 489, 106 S.Ct. at 2646. In other words, since the petitioner asserts that defense counsel were ineffective for failing to present federal constitutional arguments to the Arkansas Supreme Court on direct appeal, the

petitioner must show that he argued ineffective assistance of counsel on this ground to the Arkansas Supreme Court in his Rule 37 post-conviction petition. The petitioner argued in his Rule 37 petition as follows:

Counsel failed to appeal major constitutional claims, including substantial First, Fifth, Sixth, Eighth and Fourteenth Amendment violations due to ineffective assistance, prosecutorial misconduct and judicial error. *Moreover, none of the issues raised on appeal were identified as constitutional violations.* Finally, counsel failed to rely on controlling state and federal case law.

Petition For Permission To Proceed Under Criminal Procedure Rule 37 at 63, *Snell v. State,* No. CR–85–206 (Ark. Oct. 3, 1988) (emphasis added). Pet.Exh. 7. The petitioner has presented this claim of ineffective assistance of counsel to the state court as an independent claim in accordance with *Murray.*

■ The question of whether defense counsels' failure to raise federal claims on appeal constitutes ineffective assistance of counsel is controlled by the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner does not suggest why defense counsel failed to present federal claims on appeal nor did the evidentiary hearing shed any light on this issue. The Supreme Court, in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), stated:

We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim. Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default.

456 U.S. at 134, 102 S.Ct. at 1575. The petitioner has not carried his burden of establishing cause for failing to present his

federal claims to the Arkansas Supreme Court. Moreover, the petitioner failed to establish prejudice, because he did not show that the outcome would have been different. Finally, the constitutional violation here, if any, did not result in the conviction of one who is actually innocent. *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649.

### 2. Prosecutorial Misconduct

■ The petitioner alleges prosecutorial misconduct at the guilt phase. The petitioner claims that the prosecution made improper attempts to curry favor with potential jurors during voir dire and made improper appeals to the passions and prejudice of the jury during closing argument and during rebuttal argument. These claims were not raised at trial or on direct appeal. Accordingly, since no non-futile state remedies remain, these claims are procedurally defaulted.

The petitioner again claims that ineffective assistance of counsel establishes cause for his default. However, Snell did not allege ineffective assistance based upon defense counsels' failure to object to the prosecutor's attempts to curry favor with the jurors during voir dire in accordance with *Murray*. Therefore, the petitioner has not shown cause for his default as to this claim.

The petitioner did allege ineffective assistance based upon defense counsels' failure to object to the prosecutor's closing remarks. As discussed below, the petitioner has not established that the alleged deficient performance prejudiced the defense.

■ The petitioner also argues that the prosecution suppressed and misrepresented the plea agreement with state witness William Thomas. This claim was not presented to the state court and is therefore defaulted. However, the petitioner claims cause based upon the lack of factual knowledge necessary to make the claim. A showing that the factual or legal basis for the petitioner's claim was not reasonably available to counsel can constitute cause. *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645.

William Thomas was a participant in the Stumpp murder and was the state's key witness as to the petitioner's role in the crime. Thomas was also facing charges in federal court and on July 8, 1985, entered into a plea agreement providing that he would plead guilty to one RICO count and two others would be dismissed in exchange for cooperation and testimony in federal court. The RICO count carried a maximum penalty of 20 years. *United States v. William Thomas*, Crim. No. 85–20006–02 (W.D.Ark. Apr. 25, 1985). Pet.Exh. 48. Thereafter, on September 4, 1985, Thomas was sentenced in federal court to 12 years imprisonment, to run concurrently with sentences imposed in Missouri state and federal court.

On July 31, 1985, pretrial motions were heard in the Stumpp case. At that time, Kirk Johnson, the Stumpp prosecutor, did not disclose any consideration given for testimony. Kirk Johnson did not disclose any information regarding Thomas because he had not yet interviewed or "struck a deal" with Thomas. Hearing Tr. 1014. Kirk Johnson testified at the evidentiary hearing that once an agreement with Thomas was reached, he verbally notified the petitioner's counsel. Hearing Tr. 1023. Thus, the Court finds that the prosecution did not suppress their agreement with William Thomas.

The state's agreement with Thomas was brought out on direct examination at the petitioner's trial:

Q. Mr. Thomas, you are currently awaiting sentence on a number of charges in Federal Court, are you not?

A. I am waiting on one charge now.

Q. Excuse me, one charge?

A. Yes, sir.

Q. Do you know what your liability is on that?

A. Could be thirty years.

Q. That is up to a Federal Judge?

A. Yes, sir.

Q. In consideration of your testimony here today you have been told that you will not get any more than thirty years?

A. That is right.

Q. Is that correct?

A. Yes, sir.
Q. In relation to this matter?
A. In this matter, yes.
Q. If the State would recommend that you understand that is up to the Judge to make that decision?
A. Yes.

Trial Tr. 885. And on cross-examination:

Q. You say that you have not been charged with capital murder?
A. Not yet.
Q. Do you think you are going to be— has anybody said anything to you about being charged?
A. No, sir.—Yes they have. They said for my cooperation in this, that the time that I would get would not be more than the Federal time which could be thirty years.

Trial Tr. 904.

Following trial, Kirk Johnson decided not to take a guilty plea from Thomas at that time, but to wait until after Thomas had testified against the other accomplice, Stephen Scott. Hearing Tr. 1038–39. On June 25, 1987, Scott pled guilty to first degree murder. Pet.Exh. 41. Kirk Johnson left office in December 1986, and Thomas never pled guilty to any crime in connection with the Stumpp murder. The Court concludes that the prosecution did not misrepresent to the jury the state's deal with William Thomas. While the Court finds cause for the petitioner's default, the petitioner has failed to establish prejudice since the evidence of the plea bargain presented to the jury was the truth.

### B. *Pretrial Publicity*

■ The evidence adduced during trial showed that on November 3, 1983, Richard Wayne Snell, together with William Thomas and Stephen Scott, traveled to Texarkana, Arkansas for the purpose of robbing Joe's Pawn Shop on State Line Avenue. As stated in the opinion of the Arkansas Supreme Court:

they parked behind the pawnshop at 1:00 p.m. and after checking the Ruger pistol to make sure it was loaded, Snell entered the pawnshop, followed by Scott. When they returned Scott was carrying a box of weapons and Snell his brief case, containing $90 and a large quantity of jewelry. Snell told Thomas he shot Stumpp as he turned his back to open the safe.

*Snell v. State,* 721 S.W.2d at 637.

Thereafter, the petitioner killed again. On June 30, 1984, Arkansas State Trooper Louis Bryant was gunned down while making a traffic stop of Snell near De Queen, in Sevier County, Arkansas. Within the next hour, Snell was apprehended following a shootout near Broken Bow, Oklahoma. Then, on July 5, 1984, four De Queen police officers were killed in a traffic accident while en route to Bryant's funeral. On November 1, 1984, in Sevier County Circuit Court, the petitioner was convicted of murdering Trooper Bryant and was sentenced to life imprisonment without parole. *See Snell v. State,* 287 Ark. 264, 698 S.W.2d 289 (1985) (affirming the conviction). Immediately after the conviction in the Bryant case, the petitioner was charged with capital murder in the Stumpp case. So, the Bryant murder and the petitioner's subsequent trial and conviction for the Bryant murder, occurred in the interim between the Stumpp murder and the Stumpp trial.[4] As would be expected, the combination of the Bryant murder and trial, the fatal accident involving the De Queen officers, and the Stumpp murder and trial generated a tremendous amount of publicity.

The petitioner argues that he was denied his Sixth and Fourteenth Amendment right to a fair trial by an impartial jury because of prejudicial pretrial publicity. In spite of the publicity, the trial court denied the petitioner's motion for a change of venue. Trial Tr. 384–385. Subsequently, the trial court accepted a trial panel of jurors from

---

4. The sequence of events was as follows:
 1. November 3, 1983—Stumpp murder
 2. June 30, 1984—Bryant murder
 3. November 1, 1984—Conviction for Bryant murder
 4. August 15, 1985—Conviction for Stumpp murder

Miller County. Findings as to juror qualifications are questions of fact subject to the presumption of correctness. 28 U.S.C. § 2254(d). *See Patton v. Yount,* 467 U.S. 1025, 1036, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984).

The trial court conducted voir dire on August 8 and 9, 1985. First, the trial court and then counsel conducted general voir dire. During general voir dire, nine veniremen were excused for prejudice. Trial Tr. 392, 393, 394, 396, 397, 399, 403, 424, 443. The trial court then commenced individual voir dire. Individual voir dire was conducted for the purpose of questioning veniremen on any prejudice formed through pretrial publicity, and on their views toward imposing the death penalty or in the alternative life imprisonment without parole.

Forty veniremen were individually examined for the seating of twelve jurors and two alternates. Of the twenty-six veniremen questioned but not seated, the prosecution removed five by peremptory strike, the defense removed eleven by peremptory strike, and ten were excused for cause. Of the ten excused for cause, only six were excused in the seating of the first twelve jurors. The alternate jurors were dismissed when the jury began deliberating. Trial Tr. 1134. Of the six excused in the seating of the first twelve jurors, four were excused for prejudice and two were excused for other reasons. Trial Tr. 461, 506, 566, 586, 609, 638.

An examination of the record reveals that the jurors were impartial. The record of voir dire reveals that pretrial publicity was not nearly as pervasive as claimed by the petitioner. Juror (1) Brown indicated that "I read two or three articles—but as a firm opinion I would say probably not." Trial Tr. 507. When asked what he knew or had heard, seen or read about the petitioner, Juror (2) Hackworth stated "[b]elieve it or not, very little, because I just haven't." Trial Tr. 532–33. Juror (3) Pierce was asked if she had read any articles concerning Snell and replied, "I don't think so. This thing has been quite a while back." Trial Tr. 552. Juror (4) Smith indicated that she had not read or heard any-

thing about the case. Trial Tr. 555. In addition, Juror (5) Foote stated that if she had read any articles about the petitioner, she didn't remember it. Trial Tr. 559. Juror (6) Cox explained, "[p]ertaining to this case, I think I read one article in the paper where he was accused—not accused, but questioned about it one time I noticed in the paper." Trial Tr. 568. Concerning what she had read or heard about Snell, Juror (7) Beasley related, "The only thing I can honestly say is the other trial that he was on. As far as what happened in Texarkana I really—I didn't know that he was even a suspect until I got called up here." Trial Tr. 576. Juror (8) Potts recalled reading in the paper that the police thought the petitioner was responsible for killing Stumpp. However, she then stated that "I believe a person is innocent until proven guilty." Trial Tr. 616. Queried about whether he had formed an opinion in the case, Juror (9) Dixon responded in the negative. "No. I have heard very little. I travel quite a bit. I very seldom get the local news." Trial Tr. 619. Again, regarding publicity about Snell, Juror (10) Randall remarked, "I have not read any articles or anything." Trial Tr. 632. Juror (11) Honea observed that prior to coming for the initial voir dire, she had heard or read very little about the petitioner. Trial Tr. 639. Finally, Juror (12) McKellar mentioned that "I don't believe I read any articles about it [Snell] at all, but I think I saw something on T.V. a long time ago when it first came out." Trial Tr. 649.

While some of the jurors were aware of the petitioner's conviction in the Bryant case, jurors need not be totally ignorant of the facts and issues involved. "The accused is not entitled to an ignorant jury, just a fair one." *Simmons v. Lockhart,* 814 F.2d 504, 510 (8th Cir.1987), *cert. denied,* 485 U.S. 1015, 108 S.Ct. 1489, 99 L.Ed.2d 717 (1988). Jurors need only be able to set aside their opinions or impressions and render a verdict on the evidence presented. *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961). Here, each juror stated that he or she could set aside anything read, heard or seen and base a verdict solely upon the

evidence. The record of the voir dire falls far short of revealing such hostility towards the petitioner as to suggest a partiality that could not be laid aside. *Swindler v. Lockhart*, 885 F.2d 1342, 1348 (8th Cir.1989) (quoting *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975)), *cert. denied*, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990). *See also United States v. Faul*, 748 F.2d 1204, 1213 (8th Cir.1984), *cert. denied*, 422 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 632 (1985).

"Most significantly, [Snell] and his attorneys pronounced each juror to be 'good for the defense.'" *Simmons*, 814 F.2d at 511. Trial Tr. 516, 535, 553, 557, 560, 573, 578, 617, 622, 634, 643, 650. Juror Brown was initially challenged for cause by the defense. However, following further examination, defense counsel agreed that Juror Brown "is good." No other juror was challenged for cause. Further, during the seating of the first twelve jurors, the petitioner used only nine of his twelve peremptory challenges. Thus, the Court would be unable to find any prejudice since the petitioner was tried by a jury which he found to be acceptable. *Simmons*, 814 F.2d at 511–512.

Finally, the petitioner has submitted a large number of newspaper articles as well as video tapes of television coverage relating to the survivalist movement in Arkansas,[5] the Bryant murder and trial, the traffic accident involving the De Queen officers, and the Stumpp murder and trial. The petitioner's expert, Dr. Lawrence Noble, testified at the evidentiary hearing that Miller County was so saturated with prejudicial pretrial publicity from all these events that it would have been virtually impossible for the petitioner to receive a fair trial. Hearing Tr. 610.

Dr. Noble calculated a derogatory reference rate of approximately 6 for Miller County. The higher the rate, the greater the prejudicial pretrial publicity. Dr. Noble's derogatory reference rate dealt with pretrial publicity overall. Significantly, Dr. Noble's study did not establish the exposure of prejudicial publicity to the individual jurors. Therefore, the derogatory reference rate offers nothing but speculation as to the actual exposure of the jurors actually selected to hear the case. As to the jurors themselves, there is concrete evidence; their answers in voir dire. And, the answers in voir dire are the relevant factor. "In order to conclude whether [Snell's] right to a fair trial was prejudiced by the pretrial publicity, it is necessary to determine the *actual effect* of the publicity on the venire panel from which his jury was selected, and on the jury itself." *Simmons*, 814 F.2d at 510 (emphasis added).[6]

 Also, the mere quantity of news coverage is not sufficient by itself to render a trial constitutionally unfair. *Dobbert v. Florida*, 432 U.S. 282, 303, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344 (1977). The Court has reviewed the petitioner's exhibits and concludes that the newspaper articles and television coverage were essentially factual rather than inflammatory. *Murphy*, 421 U.S. at 800 n. 4, 95 S.Ct. at 2036 n. 4. Again, there has been no showing beyond the answers of the jurors as to the extent these particular jurors were exposed to or affected by the pretrial publicity. For the foregoing reasons, the petitioner is not entitled to relief on this claim.

### C. Ineffective Assistance of Counsel

The petitioner claims that he was denied his Sixth Amendment right to effective assistance of counsel. Snell asserts that his court-appointed trial counsel, Rick Shumaker and Marshall Moore, were constitutional-

---

5. *See generally, United States v. Ellison*, 793 F.2d 942 (8th Cir.), *cert. denied*, 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986) and *United States v. Udey*, 748 F.2d 1231 (8th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985).

6. Dr. Noble referred to a recent Kansas case where he testified as to a derogatory reference rate of 5. Hearing Tr. 602, 627. The Court notes that in the Kansas case, *Dunn v. Roberts*, 768 F.Supp. 1442, 1445–1447 (D.Kan.1991), the district court concluded that the petitioner there had not shown such prejudice that an impartial jury could not be impanelled.

ly ineffective in nearly all aspects of their representation. This Court is required to follow the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

### 1. Pretrial Publicity

■ The petitioner's first claim of ineffective assistance of counsel relates to pretrial publicity. Snell contends that defense counsels' preparation of the change of venue motion was poorly drafted. Also, defense counsel did not collect enough articles and failed to obtain a copy of the Crime Stoppers reenactment of the Stumpp murder. However, the change of venue motion was timely and properly filed along with two affidavits. The two affiants testified at the hearing. Trial Tr. 367, 379. Following denial of the change of venue motion, the petitioner contends that defense counsel should have requested a continuance. Presumably, the publicity and the emotions of the citizens would have cooled before trial.

The petitioner also claims the defense counsel were derelict for failing to request a pretrial hearing concerning evidence of other crimes. The other crimes evidence related to the activities of the CSA. The Arkansas Supreme Court determined that this evidence was properly admitted. In any event, uncontroverted evidence of the murder and the circumstances of the murder force the conclusion that the deficient performance, if any, did not prejudice the petitioner.

### 2. Voir Dire

■ The petitioner next argues that defense counsel failed to conduct a thorough and effective voir dire. Specifically, defense counsel failed to object for cause to a number of jurors. However, as discussed above, each juror stated at voir dire that he or she could be impartial and decide the case on the evidence presented. Therefore, Snell has not shown that defense counsels' performance in failing to object was deficient.

### 3. Failure to Investigate

■ The petitioner next alleges that defense counsel were ineffective for failure to conduct adequate pretrial discovery. Specifically, defense counsel failed to: (1) request production of pawnshop records (2) interview William Thomas, the state's key witness (3) seek full disclosure of the plea agreement between the state and Thomas and (4) interview the petitioner's wife, Mary Snell.

The pawnshop records relate to a .45 caliber automatic pistol acquired by William Stumpp in a pawn. The petitioner took the pistol in the pawnshop robbery and used it in the gun fight with police in Oklahoma following the Bryant killing. *Snell v. State*, 721 S.W.2d at 632. The petitioner maintains that the pawnshop records would have shown if and when the pistol was brought into the pawnshop. This claim assumes without establishing as a fact, that the records would have negated the prosecution's evidence.

Rick Shumaker stated at the evidentiary hearing that defense counsel attempted to interview Thomas, but he refused to speak with them. Hearing Tr. 100. Also, defense counsel did seek disclosure of the Thomas plea agreement and questioned Thomas about it on cross-examination. Trial Tr. 904–906. Finally, Rick Shumaker

testified at the evidentiary hearing that defense counsel talked to Mrs. Snell about testifying at the penalty phase. Hearing Tr. 376–377. As to all of these claims, the petitioner has not established deficient performance by defense counsel.

### 4. Failure to Object

 The petitioner claims that defense counsel were ineffective for failing to object to: (1) the testimony of various witnesses regarding weapons (2) questions of Martha Durham and Tim Russell concerning the CSA (3) certain questions asked of William Thomas and (4) the presence of Mrs. Bryant in the courtroom during the trial when the prosecution had designated her as a witness, and (5) that defense counsel should have cross-examined state witness Fahmy Malak, Chief Medical Examiner in the State Medical Examiner's office, to elicit evidence that William Stumpp's death was painless.

The petitioner states that the weapons witnesses were not experts and were not qualified to give their opinions. Snell has not established why defense counsel should have objected or how the petitioner was prejudiced.

Defense counsel objected numerous times on relevancy grounds to CSA related questions to witnesses other than Durham and Russell. The Arkansas Supreme Court determined that the trial court had not abused its discretion in allowing this evidence. Even if defense counsel should have objected to questions asked of these particular witnesses, the facts of the murder were so stark that it cannot be claimed that the admission of this evidence produced a result that was unreliable.

William Thomas answered four questions on direct examination without objection. Defense counsel, according to the petitioner, should have objected because the questions were prejudicial. However, it cannot be said that the election not to object was so serious as to deprive the petitioner of a fair trial, particularly since when and

whether to object involves trial tactics of many facets.

Likewise, the petitioner has not established that the presence of Trooper Bryant's widow in the courtroom deprived him of a fair trial. Finally, the fact that William Stumpp's death may have been painless has no bearing on the conviction phase of the trial.

### 5. Stephen Scott

 Scott was an accomplice in the Stumpp robbery and murder. Defense counsel called Stephen Scott as a defense witness. Upon being called to the stand, and in front of the jury, the following colloquy took place:

THE COURT:

You are Stephen Scott?

MR. SCOTT:

That is correct.

THE COURT:

Mr. Scott, are you familiar with your Miranda—

MR. SHUMAKER:

—Your Honor, can I approach the bench? Trial Tr. 1039.

Subsequently, the jury was excused and the court appointed an outside lawyer as counsel for Scott. Scott never returned to the stand.[7] Defense counsel moved for a mistrial because the court started to read the witness the *Miranda* warnings in front of the jury.

The petitioner contends that defense counsel were ineffective for failing to advise Scott of his right to advice of independent counsel, to ensure that Scott was advised of his rights out of the presence of the jury, and to object to the prosecutor's and the court's statements concerning Scott's Fifth Amendment privilege.

The petitioner raised this issue on direct appeal. The Arkansas Supreme Court stated:

We don't regard this unfinished remark as a comment on the weight of the evi-

---

**7.** On June 25, 1987, Stephen Scott pled guilty to first degree murder in connection with the

Stumpp robbery and murder. Pet.Exh. 41.

dence or on the credibility of the witness. Earlier, the *Miranda* warnings had been given to a witness for the state at the request of defense counsel. Even if the jury sensed the purpose of the words we do not believe a mistrial was warranted. *Snell v. State,* 721 S.W.2d at 634. This Court concludes that the prejudicial effect, if any, of the trial court starting to read Scott his *Miranda* rights did not deprive the petitioner of a fair trial. Accordingly, defense counsels' performance in regard to Scott was not deficient.

### 6. Instructions

 The petitioner next claims that defense counsel were ineffective for failing to request certain jury instructions. Specifically, defense counsel failed to request an instruction on the lesser-included offense of second degree murder, and instructions concerning other crimes evidence.

The petitioner contends that the proof at trial would have entitled him to an instruction on second degree murder had one been requested. Snell does not say what proof that is. Again, the petitioner has failed to show that the error, if any, produced a result that is unreliable.

### 7. Prosecutor's Closing Remarks

 The petitioner claims that defense counsel were ineffective for failing to object to the prosecution's remarks that: (1) were calculated to elicit sympathy for the victim (2) were about the CSA and its activities (3) vouched for the credibility of the prosecution's own witnesses and statements of personal opinion about the petitioner's guilt (4) were assertions of facts not in evidence (5) used language abusive of the petitioner and defense counsel and (6) asserted that evidence of alleged prior bad acts constituted evidence of petitioner's bad character.

In the face of uncontroverted evidence of guilt, this Court cannot find that this alleged deficient performance of defense counsel prejudiced the defense. The petitioner is not entitled to relief on his claims of ineffective assistance of counsel at the guilt phase.

### D. *Prosecutorial Misconduct*

 The petitioner argues that his Fifth and Fourteenth Amendment rights were violated as a result of prosecutorial misconduct. Snell argues that the prosecutor failed to disclose two items of exculpatory evidence. The United States Supreme Court, in *Brady v. State of Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963), held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Later, in *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985), the Court stated that evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *See also Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987).

Here, although the petitioner moved for the production of any exculpatory material pursuant to Arkansas Criminal Procedure Rule 17, nothing was produced. The first allegedly exculpatory item was a statement of state witness Joe Cerrato. As stated by the Arkansas Supreme Court:

Before cross-examination began, defense counsel asked whether the witness had given a statement. He said he had been orally interviewed. Evidently with difficulty, a taped interview by police was located and furnished to appellant. The next day the defense moved for a mistrial on the allegation that "possibly exculpatory information" had been withheld in that Cerrato reported that William Stumpp had been threatened over a pawn by a black man some two weeks before his death. The state counters that it had no knowledge of the information, that it was "rank hearsay" and does not tend to "negate the guilt of the defendant" as provided in A.R.Cr.P. Rule 17.

We reject appellant's argument for two reasons: first, we are told nothing of the threat itself, what prompted it, or how seriously it might be regarded, nor was Mr. Cerrato questioned about the threat or the source of his information. To sustain the argument would be to rely on what may prove to be pure rumor, wholly lacking in substance. The appellant's characterization of the information as *possibly* exculpatory suggests that likelihood. It is the appellant's burden to demonstrate prejudicial error, not merely to allege it.

*Snell v. State,* 721 S.W.2d at 633 (emphasis in original).

The petitioner merely alleges that the statement was both material and favorable. The evidentiary hearing produced nothing further in regard to the Cerrato statement. The Court concludes that the evidence was not material since there is not a reasonable probability that the outcome would have been different.

The other allegedly exculpatory item was a statement of John Holmer. Again, the Court quotes the Arkansas Supreme Court:

At an omnibus hearing the defense alleged the state was withholding a statement by Holmer, inferring the statement was exculpatory. The state categorically denied the claim and said it had not decided whether to call Holmer as a witness. The state alleged Holmer and the defense were in direct communication, which was not refuted. The issue was resolved, to the apparent satisfaction of both sides, when the defense proposed simply that the trial judge examine Holmer's statement during the trial. The trial judge did that in chambers and said it was free of any exculpatory information.... We agree with the trial court, the statement is entirely free of any information tending to negate the guilt of Richard Wayne Snell.

*Snell v. State,* 721 S.W.2d at 633–634. *See also Snell v. State,* 290 Ark. 184, 717 S.W.2d 818 (1986) (per curiam) (ordering

that the record on appeal be supplemented to include Holmer's statement).[8]

Again, the petitioner states that the Holmer statement contained material and exculpatory evidence. The petitioner did not produce the Holmer statement at the evidentiary hearing. Accordingly, the only portions of the statement available for review by the Court are those set out by Justice Purtle in his dissenting opinion:

Some of the examples of questions and answers in the Holmer statement are:

Q: He never did specifically mention robbing?

A: No.

. . . . .

Q: Has Wayne Snell ever mentioned to you the possibility of robbing Bill Stumpp?

A: No ... well, he might have, I don't know, he always talked about wild things, he might have.

. . . . .

Q: Okay John at this time I would like to show you a watch fob that came from the Pawn Shop on the day of the murder, can you identify it?

A: I don't know ... he dealt in pocket watches, most of the stuff he dealt in was gold ... that appears to be silver but he did deal in gold and silver. I don't know.

Q: But you can't say that you've ever seen it in his or Mary Jo's possession?

A: I can't say that positively that I have.

. . . . .

Q: Has he ever mentioned the Pawn Shop murder to you?

Q: Would he mention the pawn shop murder to you?

A: No, he thought I was a federal agent when he first met me.

. . . . .

Q: If Wayne Snell did in fact commit the Murder at Joe's Pawn Shop, why do you think he couldn't have gotten rid or sold or destroyed the murder weapon?

---

**8.** Since Holmer did not testify, his statement was not provided to the petitioner. *See* Ark. Stat.Ann. § 43–2011.3(a) (recodified at Ark.Code Ann. § 16–89–115).

A: That goes against everything I have ever seen ... he always said you steal something or take something like that, never take anything that is serial that can be tied back to you ... that's why it didn't make a lick of sense to me when I was told that was the weapon.

. . . . .

Q: John at this time I would like to show you two 22 weapons that were found in the van with Wayne Snell, see if you can identify either one of them.
A: I've never seen one rigged that way but I have seen a similar weapon.

. . . . .

Q: There is no major criminal ring that they are involved in?
A: No, not that I am aware of ... I don't think so, I really don't. When I first met them I used to smoke pot. I used to do a lot of things but I talked to Jim Ellison about that one time and he said he thought that he was being a servant of the devil.

. . . . .

Q: You've never heard them advocate killing?
A: No.

*Snell v. State,* 721 S.W.2d at 641. The petitioner has not established that had the evidence been disclosed to him the result probably would have been different. *Nassar v. Sissel,* 792 F.2d 119, 121 (8th Cir. 1986). Therefore, the petitioner is not entitled to relief on this claim.

Any remaining issues raised in the briefs concerning the guilt phase are disregarded as having no merit.

## II. PENALTY PHASE

### A. *Procedural Default*

■■■ The respondent asserts procedural default defenses to the penalty phase claims of prosecutorial misconduct and sentencing instruction error. During the penalty phase, Snell asserts that the prosecutor argued four invalid aggravating circumstances: cold-blooded and premeditated conduct, especially heinous and atrocious conduct, great risk of death to others, and pecuniary gain. However, these claims were not raised at trial or on direct appeal. Accordingly, since no non-futile state remedies remain, these claims are procedurally defaulted.

The petitioner claims ineffective assistance of counsel as cause. The petitioner did allege ineffective assistance based upon defense counsels' failure to object to the argument of four invalid aggravating circumstances in his Rule 37 petition. As discussed below, the petitioner has not established prejudice.

The petitioner asserts that the sentencing instructions to the jury violated his Fifth, Eighth and Fourteenth Amendment rights. Specifically, Snell objects to the instructions regarding aggravating and mitigating circumstances. However, the petitioner did not object at trial and did not raise the issue on appeal. Therefore, since no non-futile state remedies remain, this claim is defaulted unless the petitioner can establish cause and prejudice. The petitioner again claims ineffective assistance of counsel as cause. The petitioner did allege ineffective assistance of counsel on this ground in his Rule 37 petition.

■■■ During deliberations, the jury sent out a note which stated: "Jury wants a definitive [sic] definition on (1) 'MITIGATING' & (2) 'AGGRAVATING'." Pet.Exh. 38. Without objection, the trial court answered as follows: " 'Aggravating' is reasons why the *death penalty should be imposed.* 'Mitigating' is reasons why the death penalty should not be imposed." Pet.Exh. 39. First, the petitioner asserts that the trial judge improperly conveyed his personal feelings to the jury by underscoring "death penalty should be imposed." Petition at 212. The respondent contends that one of the jurors did the underscoring after receiving the note. Respondent's Post–Hearing Brief at 71. The issue was dropped at the evidentiary hearing after the cross-assertions were made. Without further proof, the petitioner has not established that the trial court did the underscoring.

The petitioner also alleges that the answer given was improper in that it was

incorrect, incomplete, over broad and vague. These contentions are rejected. In answering the jury's question, the trial court did explain the distinction between aggravating and mitigating. The distinction as explained was correct. Defense counsels' handling of the answer to the jury question was a purely tactical matter. Defense counsels' performance was not deficient. Therefore, the petitioner has not established cause for his default.

■ The petitioner also contends that defense counsel were ineffective for failing to include statutory mitigating circumstances on the verdict forms.[9] Pet.Exh. 56. The United States Supreme Court has held that mitigating circumstances are open-ended. *See Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion).

However, it is error to draft the verdict to include nonrelevant mitigating circumstances and thereby invite the jury to select one where there is no evidence. The jury may not be precluded from considering "any *relevant* mitigating evidence." *Eddings*, 455 U.S. at 114, 102 S.Ct. at 877 (emphasis added). The petitioner contends that there existed three relevant mitigating circumstances. The first two are: "extreme mental or emotional disturbance" and "unusual pressures or influences." Dr. Brad Fisher, a psychologist, testified at the evidentiary hearing that Snell was suffering from a paranoid delusional disorder.

Hearing Tr. 1335. The Court concludes that the weight of this testimony was insignificant. The failure to demand a listing of nonrelevant mitigating circumstances was not deficient performance.

■ The petitioner, relying on *Woodard v. Sargent*, 806 F.2d 153 (8th Cir.1986), claims that the failure to request the mitigating circumstance of "no significant history of prior criminal activity" was ineffective assistance of counsel. In *Woodard*, defense counsel did not seek the inclusion of this statutory mitigating factor. The court stated that "the failure to seek the inclusion of this obvious mitigating circumstance certainly fell below the threshold of reasonably competent assistance." *Woodard*, 806 F.2d at 157. The court then found prejudice concluding that defense counsel's error undermined confidence in the outcome of the trial.

This case is different. Here, the petitioner elected not to present any mitigating evidence. As discussed below, the election relieved defense counsel of their obligation to include this statutory mitigating circumstance. Since the petitioner declined to present a case in mitigation, the failure to "seek the inclusion of this obvious mitigating circumstance" did not prejudice the defense. The petitioner has not established cause for his default.

**B.** *Ineffective Assistance of Counsel*

The petitioner maintains that defense counsel were ineffective in the penalty phase.[10] In Arkansas, a capital murder

---

**9.** Ark.Stat.Ann. § 41–1304 (recodified at Ark. Code Ann. § 5–4–605) provided:

> Mitigating circumstances shall include, but are not limited to the following:
> (1) the capital murder was committed while the defendant was under extreme mental or emotional disturbance;
> (2) the capital murder was committed while the defendant was acting under unusual pressures or influences or under the domination of another person;
> (3) the capital murder was committed while the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse;

> (4) the youth of the defendant at the time of the commission of the capital murder;
> (5) the capital murder was committed by another person and the defendant was an accomplice and his participation was relatively minor;
> (6) the defendant has no significant history of prior criminal activity.

**10.** The petitioner also insists that defense counsel were ineffective in the appellate phase. The petitioner is entitled to effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). The petitioner alleges that defense counsel failed to recognize major issues and failed to request oral argument. Whether defense counsel were ineffective in failing to raise constitutional issues on

trial is bifurcated. Following conviction, the same jury sits again in order to hear additional evidence and determine the sentence. Ark.Stat.Ann. § 41–1301 (recodified at Ark.Code Ann. § 5–4–602). The state may present evidence of aggravating circumstances and the defense may present evidence of mitigating circumstances. If the jury determines that aggravating circumstances exist beyond a reasonable doubt, that aggravating circumstances justify a sentence of death beyond a reasonable doubt, and that aggravating circumstances outweigh mitigating circumstances, a sentence of death is imposed. If not, the jury imposes a sentence of life imprisonment without parole.[11]

### 1. Waiver

■ The importance to the defendant of mitigating circumstances in avoiding the death penalty is obvious from the statute. However, in this case the petitioner elected not to present a case in mitigation. The petitioner now claims that he did not make a valid waiver and that the failure to present evidence of mitigating circumstances was the result of ineffective assistance of counsel.

A waiver of the Sixth Amendment right to assistance of counsel must be made "knowingly and intelligently." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464–465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Recently, a federal district court in *Jeffries v. Blodgett*, 771 F.Supp. 1520, 1552 (W.D.Wash.1991), faced this issue in a capital murder penalty phase context and framed the inquiry. "The initial, and most important, question is whether [Snell] made a knowing and informed decision." Second, "even assuming a conscious decision by [Snell], were defense counsel bound to abide by his choice?"

Minutes after having been found guilty of capital murder, defense counsel and the court asked the petitioner outside the presence of the jury whether he wanted to present mitigating evidence in the penalty phase.

THE COURT:
Mr. Snell, come around and have a seat on the witness stand. You may proceed questioning him as to mitigating circumstances.
BY MR. MOORE:
Mr. Snell, as you are aware, this is the time when you are capable of putting on mitigating circumstances. Do you understand that?
A. Yes, sir, I do.
Q. Mr. Shumaker and I have discussed this with you, have we not?
A. Well, yes, I guess you have, although I think it is a little late at this moment for me to say anything.
Q. What do you mean by that, sir?
A. I just mean that. At this point I don't care.
Q. In my conversation with you a few minutes ago, was it not your desire to not put on any mitigating circumstances?
.A. That is correct.
Q. That is still your desire at this time, is that correct, sir?

***

direct appeal is discussed in connection with procedural default, *supra*. The petitioner has not shown that the outcome would have been different had defense counsel requested oral argument on direct appeal.

**11.** Ark.Stat.Ann. § 41–1302 (recodified at Ark. Code Ann. § 5–4–603) provided:

(1) The jury shall impose a sentence of death if it unanimously returns written findings that:
(a) aggravating circumstances exist beyond a reasonable doubt; and
(b) aggravating circumstances outweigh [outweigh] beyond a reasonable doubt all mitigating circumstances found to exist; and
(c) aggravating circumstances justify a sentence of death beyond a reasonable doubt.
(2) The jury shall impose a sentence of life imprisonment without parole if it finds that:
(a) aggravating circumstances do not exist beyond a reasonable doubt; or
(b) aggravating circumstances do not outweigh [outweigh] beyond a reasonable doubt all mitigating circumstances found to exist; or
(c) aggravating circumstances do not justify a sentence of death beyond a reasonable doubt.
(3) If the jury does not make all findings required by subsection (1), the court shall impose a sentence of life imprisonment without parole.

A. That is correct.

THE COURT:

Mr. Snell, let me ask you for the Court's benefit and for the record much the same questions as Mr. Moore has asked you. To reiterate the question once again, you do not wish to put on any testimony pertaining to mitigating circumstances? Is that correct?

MR. SNELL:

No, your honor.

THE COURT:

You know what mitigating circumstances are, what that means?

MR. SNELL:

Yes, sir.

THE COURT:

Have a seat back where you were.

MR. SNELL:

Thank you, sir.

Trial Tr. 1135–1137.

Rick Shumaker testified at the evidentiary hearing that the petitioner insisted from the beginning, four to six months prior to trial, that he did not wish to present evidence of mitigating circumstances in the Stumpp case because "he did not want to put his family and friends through that again." Hearing Tr. 372. The petitioner also stated to defense counsel that he did not want to spend the rest of his life in a cage. Hearing Tr. 373, 375.

Other facts indicate a knowing and informed waiver. As noted above, the petitioner had recently been convicted of capital murder in the Bryant case. There, the petitioner presented a case in mitigation of the death penalty and was sentenced to life imprisonment.[12] So, the petitioner, having just been a defendant in the Bryant capital murder trial, understood the bifurcated trial process and the purpose of mitigating evidence. Moreover, in the Bryant trial, the petitioner acted as co-counsel and even delivered the opening statement. The petitioner's active role continued in the Stumpp case where he again acted as co-counsel,

exerting his will and participating in the voir dire.

The Court must also consider the nature of the petitioner's crime. The petitioner was convicted of capital murder in the death of William Stumpp. The petitioner acted with brutal deliberation, shooting Mr. Stumpp three times in the back of the head. If the petitioner can act with such cold calculation, he is certainly capable of waiving his right to present evidence in mitigation.

Based on Snell's stated desires long before trial, the examination of the petitioner by defense counsel and the court immediately prior to the penalty phase, the petitioner's experience in the Bryant trial, his active role in his own defense in both capital murder trials, and the nature of the crime, the Court concludes that the petitioner made a knowing and intelligent waiver of his right to present evidence of mitigating circumstances.

■ The next question is whether defense counsel were bound to abide by the petitioner's choice. This Court is guided by the *Strickland* standard. Deborah Sallings, formerly a capital murder specialist for the Pulaski County Public Defender's Office, testified at the evidentiary hearing that it is not uncommon for defendants charged with capital murder to express a desire not to present mitigating evidence if convicted. Hearing Tr. 688. According to Ms. Sallings, defense counsel must never defer to those wishes, but have a duty to make great efforts to persuade the defendant to present mitigating evidence. Such efforts would include having mitigation witnesses available and ready to testify. Admittedly, defense counsel, based upon the petitioner's directives, did not have mitigation witnesses prepared. Nonetheless, Rick Shumaker testified at the evidentiary hearing that defense counsel would have requested a continuance to prepare mitiga-

---

12. Mitigation witnesses in the Bryant trial included Mary Snell, petitioner's wife, Dorothy Chambers, petitioner's daughter, and Mary Lou Hicks, petitioner's step-sister. Mitigation witnesses in the evidentiary hearing were Mary Lou Hicks, Pet.Exh. 89, Mary Snell, Hearing Tr. 1353–1399, Dorothy Chambers, Hearing Tr. 1220–1243, and Misty Chambers, the petitioner's grand-daughter. Hearing Tr. 1212–1219.

tion in the event that Snell changed his mind. Hearing Tr. 395.

Defense counsel were not free to ignore the wishes of the petitioner. The petitioner has the constitutional right to self-representation. *Faretta, supra.* If the petitioner has that right, he certainly has the right to make such a fundamental and personal decision as whether to present mitigating evidence following a capital murder conviction. Defense counsels' acceding to Snell's desires on this issue was not deficient performance under *Strickland.*[13]

### 2. Closing Remarks

■ The petitioner next contends that defense counsels' closing remarks were ineffective. According to Snell, defense counsel did not effectively argue for his life. Further, the closing remarks were "rambling" and "incoherent." Marshall Moore began his argument by telling the jury that the petitioner's life was in their hands. Mr. Moore then discussed the two aggravating circumstances listed on the verdict form and suggested that life imprisonment without parole was appropriate punishment. He also noted that state witness and accomplice, William Thomas, would not get more than 30 years. Mr. Moore concluded his remarks by emphasizing that the Old Testament code of an eye for an eye was repudiated with the birth of Christ. Trial Tr. 1144–1146. Defense counsel's closing remarks were far from being deficient.

### 3. Prosecutor's Closing Remarks

■ The petitioner argues that defense counsel should have objected to the prosecutor's closing remarks. Specifically, defense counsel should have objected to the prosecution's argument of four aggravating circumstances. Two of the aggravating circumstances were statutory and are discussed below.

The petitioner contends that the two other non-statutory aggravating circumstances were argued to inflame the jury. The petitioner states that the first circumstance argued was that the murder was committed in a particularly "cold-blooded" and "premeditated" manner. The second non-statutory aggravating circumstance that should have been objected to was that the crime was especially "heinous" and "atrocious."[14] Again, even assuming that defense counsels' performance in failing to object was deficient, the petitioner has not established that the result was unreliable.

### 4. Jury Question

■ The petitioner contends that defense counsel should have objected to the trial court's answering of a jury question. The jury sent out a note asking if life without parole *"really* means *no parole."* Pet.Exh. 38. The trial court, by agreement with both sides, answered that "the defendant will be incarcerated in the Arkansas Department of Corrections for a period of life or until and unless the Governor of the State of Arkansas commutes the sentence to a term of years or a number of years." Pet.Exh. 39.

■ At the evidentiary hearing, Rick Shumaker explained that defense counsel agreed to the trial court's answer because it appeared that the jury was thinking along the lines of life imprisonment without parole instead of the death penalty. Hearing Tr. 95, 455. The decision to agree to answer the jury question was a tactical one.[15] As such, the petitioner has not shown that defense counsels' actions were

---

**13.** In *Jeffries, supra,* the district court concluded that the petitioner there had made a knowing and intelligent waiver, and that defense counsel's performance in abiding by the petitioner's choice was not deficient.

**14.** That the capital murder "was committed in an especially heinous, atrocious, or cruel manner" has since been added as a statutory aggravating circumstance. Ark.Code Ann. § 5–4–604(8).

**15.** The petitioner also seeks relief for the answering of the jury question on another ground. The petitioner contends that in answering the jury question, the trial court committed error which violated his Fifth, Eighth and Fourteenth Amendment rights. The respondent, relying on *California v. Ramos,* 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), asserts that no constitutional error resulted. The Court agrees.

inadequate trial strategy under the circumstances. *See Sanders v. Trickey*, 875 F.2d 205, 207 (8th Cir.), *cert. denied*, 493 U.S. 898, 110 S.Ct. 252, 107 L.Ed.2d 201 (1989).

### 5. Pecuniary Gain

■■■ Aggravating circumstances are limited to those established by statute.[16] Here, the jury found the existence of two aggravating circumstances beyond a reasonable doubt: that the petitioner "knowingly created a great risk of death to a person other than the victim" and that "the capital murder was committed for pecuniary gain."

On September 23, 1991, the Eighth Circuit issued a decision in the case of *Fretwell v. Lockhart*, 946 F.2d 571 (8th Cir. 1991), *petition for cert. filed*, 60 U.S.L.W. 3655 (U.S. Mar. 2, 1992) (No. 91–1393). In August 1985, Fretwell was tried and convicted of capital felony murder, committed in the course of a robbery. The Arkansas jury found the aggravating circumstance of pecuniary gain and sentenced Fretwell to death.

Seven months prior to Fretwell's trial, the Eighth Circuit in *Collins v. Lockhart*, 754 F.2d 258 (8th Cir.), *cert. denied*, 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985), held that the aggravating circumstance of pecuniary gain was constitutionally unacceptable in robbery/murder cases. Since the motive of pecuniary gain was an element of robbery, use of it again in the penalty phase constituted double counting which did not genuinely narrow the class of persons eligible for the death penalty. Accordingly, the court held it unconstitutional.

Subsequently, in *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), the United States Supreme Court permitted the use of an element of a capital crime as an aggravating circumstance. The Eighth Circuit then overruled *Collins* and now permits the use of pecuniary gain as an aggravating circumstance. *Perry v. Lockhart*, 871 F.2d 1384, 1393 (8th Cir.), *cert. denied*, 493 U.S. 959, 110 S.Ct. 378, 107 L.Ed.2d 363 (1989).

Nevertheless, *Collins* was good law for approximately four years. So, at the time of Fretwell's trial, *Collins* was the law in the Eighth Circuit. Therefore, Fretwell alleged ineffective assistance of counsel for the failure to object to pecuniary gain based on *Collins*. In *Fretwell*, the Eighth Circuit agreed, stating "[w]e conclude that a reasonable state trial court would have sustained an objection based on *Collins* had Fretwell's attorney made one. Therefore, the district court correctly found that Fretwell's sixth amendment right to effective assistance of counsel was violated." 946 F.2d at 577. Like Fretwell, Snell was tried, convicted and sentenced to death in August 1985. *Collins* was good law at the time of Snell's trial. Thus, under *Fretwell*, Snell's Sixth Amendment right to effective assistance of counsel was violated based on a failure to make a *Collins* objection.[17]

---

**16.** Ark.Stat.Ann. § 41–1303 (recodified at Ark. Code Ann. § 5–4–604) provided:

Aggravating circumstances shall be limited to the following:

(1) the capital murder was committed by a person imprisoned as a result of a felony conviction;

(2) the capital murder was committed by a person unlawfully at liberty after being sentenced to imprisonment as a result of a felony conviction;

(3) the person previously committed another felony an element of which was the use of threat of violence to another person or creating a substantial risk of death or serious physical injury to another person;

(4) the person in the commission of the capital murder knowingly created a great risk of death to a person other than the victim;

(5) the capital murder was committed for the purpose of avoiding or preventing an arrest or effecting an escape from custody;

(6) the capital murder was committed for pecuniary gain; or

(7) the capital murder was committed for the purpose of disrupting or hindering the lawful exercise of any government or political function.

**17.** At the evidentiary hearing, Tom Carpenter, an expert in death penalty litigation, testified that the trial court telephoned him after the guilty verdict in *Snell* to discuss *Collins* and the use of pecuniary gain as an aggravating circumstance in the penalty phase. Hearing Tr. 1259–1263.

Arkansas is a weighing state. That is, aggravating circumstances must outweigh any mitigating circumstances. In *Fretwell*, the jury found pecuniary gain as the only aggravating circumstance. Consequently, when pecuniary gain was discounted, there were no aggravating circumstances and thus no possibility of a death sentence.

■ In contrast, Snell's jury found two aggravating circumstances. So, even without pecuniary gain, a valid aggravating circumstance remains.[18] Further, the Snell jury found no mitigating circumstances. The respondent asserts that under the doctrine of *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the Arkansas Supreme Court may uphold the death penalty by reweighing the circumstances or by applying harmless-error analysis. Under *Clemons*, reweighing is properly done by state appellate courts. This Court may not *sua sponte* reweigh the circumstances or apply harmless-error analysis. *Clemons, supra; See also Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Consequently, the respondent requests a return to the Arkansas Supreme Court.

The petitioner contends that such an attempt to "salvage the death sentence" would be futile since the Arkansas Supreme Court's position is clear.

> We cannot, as the State urges us to do, hold the error to be harmless on the theory that the jury found two other aggravating circumstances and no mitigating ones. The jury must find not only that the aggravation outweighs the mitigation but also that the aggravating circumstances "justify a sentence of death beyond a reasonable doubt." § 41–1302(1)(c). In a death case we are not in a position to speculate about what the jury might have done if it had found only two aggravating circumstances instead of three.

*Williams v. State*, 274 Ark. 9, 12, 621 S.W.2d 686, 687 (1981), *cert. denied*, 459 U.S. 1042, 103 S.Ct. 460, 74 L.Ed.2d 611 (1982). The practice of the Arkansas Supreme Court in those cases is to "direct that the sentence be reduced to life imprisonment without parole" unless the state requests a new sentencing hearing. 621 S.W.2d at 688.

However, the Arkansas Supreme Court cases predate *Clemons*. In addition, in 1987, the Arkansas legislature directed the Arkansas Supreme Court to apply harmless-error review in death cases. Ark.Code Ann. § 5–4–603(d). The petitioner contends that applying the statute to him would violate the *ex post facto* clause. U.S. CONST. art. I, § 10, cl. 1. Whether the Arkansas Supreme Court will apply *Clemons* or the statute are decisions exclusively within the province of that court. *See Smith v. Dixon*, 766 F.Supp. 1370, 1386 (E.D.N.C.1991).

The Arkansas Supreme Court may determine that Ark.Code Ann. § 5–4–603(d) cannot be applied to the petitioner and/or that the court is without authority to reweigh the circumstances or apply harmless-error review. *See Clemons v. Mississippi*, 593 So.2d 1004 (Miss.1992) (on remand). If the Arkansas Supreme Court declines to reweigh the circumstances or apply harmless-error review, it is, of course, free to order that Snell be resentenced. In the event of a new sentencing hearing, the state would not be entitled to use pecuniary gain as an aggravating circumstance as that would "perpetuate the prejudice caused by the original sixth amendment violation." *Fretwell*, 946 F.2d at 578.

Any remaining issues raised in the briefs concerning the penalty phase are disregarded as having no merit.

## III. CONCLUSION

In sum, the petitioner's guilt phase claims relating to CSA evidence and prosecutorial misconduct are procedurally de-

---

**18.** The petitioner does allege that the other aggravating circumstance, knowingly creating a great risk of death to a person other than the victim, is also invalid. The petitioner's argument is without merit. William Thomas testified at trial that he was supposed to shoot whoever came upon the robbery. Trial Tr. 900.

**1388**

faulted. The petitioner is not entitled to relief on his guilt phase claims relating to pretrial publicity, ineffective assistance of counsel and prosecutorial misconduct. Thus, the capital murder conviction must stand.

The petitioner's penalty phase claims of prosecutorial misconduct and sentencing instruction error are procedurally defaulted. The petitioner is not entitled to relief on any of his penalty phase claims of ineffective assistance except for the failure of defense counsel to make a *Collins* objection. Because of that failure, the Court must set aside the death penalty subject to further review by the Arkansas Supreme Court. Therefore:

IT IS ORDERED, THAT THE PETITION FOR WRIT OF HABEAS CORPUS IS DENIED AS TO THE VERDICT AND CONVICTION OF CAPITAL MURDER.

IT IS FURTHER ORDERED, THAT THE PETITION FOR WRIT OF HABEAS CORPUS IS GRANTED AS TO THE VERDICT AND SENTENCE OF EXECUTION, AND THE MATTER IS RETURNED TO THE ARKANSAS SUPREME COURT FOR FURTHER PROCEEDINGS BY IT OR AT ITS DIRECTION.